ROCCO DiPALMO and JOSEPHINE DiPALMO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Di Palmo v. Commissioner
Docket No. 1647-78.
United States Tax Court
T.C. Memo 1983-493; 1983 Tax Ct. Memo LEXIS 289; 46 T.C.M. (CCH) 1124; T.C.M. (RIA) 83493; August 17, 1983. Mary Ann Hagan, for the petitioners. Eugene J. Wien, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent determined deficiencies in tax and additions to tax for petitioners' taxable years 1965, 1968 and 1970, as follows: Addition to Tax
Taxable Year
Deficiency
Sec. 6653(b) [1]
Sec. 6653(a)
1965
$4,073.88
$2,036.74 [2]
1968
45,431.50
22,715.75 [2]
1970
7,874.14
$393.71
*291 After concessions by the parties, [3] the following issues are presented for our determination: (1) whether Rocco DiPalmo's understatements of income for his 1965 and 1968 taxable years are attributable to fraud within the intendment of sections 6501(c)(1) and 6653(b); (2) whether deductions of $52,007.20 for purchases accrued, $1,200 for wages paid, and $3,000 for forfeiture of deposit are allowable for petitioners' 1968 taxable year; and (3) whether petitioners are entitled to deductions for various home office expenses, office supply expenses, and travel and entertainment expenses for 1965 and 1968. We need reach issues (2) and (3) only if we find for respondent on issue (1); otherwise, respondent is barred by the statute of limitations from asserting deficiencies for petitioners' 1965 and 1968 taxable years. *292 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners resided in Cherry Hill, New Jersey, when the petition in this case was filed. They filed their 1965 joint Federal tax return on April 15, 1966, and their joint return for 1968 on April 15, 1969. Respondent's notice of deficiency for those years was issued November 23, 1977. Upon graduation from high school in 1947, petitioner Rocco DiPalmo (hereinafter Rocco) began working as a laborer for his father's business, DiPalmo Concrete Co. (DiPalmo Concrete). Except for two years' service in the Army, Rocco continued to work for his father's business in various capacities until 1959, when his father died and Rocco took over the business. DiPalmo Concrete's business consisted in constructing concrete footings, curbing, sidewalks and slabs as a subcontractor. DiPalmo Concrete was operated as a sole proprietorship throughout the years before us. In addition to his high school education, Rocco completed 27 courses at Temple University night school between 1953 and 1957. These courses covered topics such as blueprint reading, technical mathematics, electrical heating and plumbing, and business *293 ethics, [4] and did not include any courses in accounting or tax. William Lovett (hereinafter Lovett) served as the accountant for DiPalmo Concrete from some time before Rocco began working for his father in 1947 through the taxable years at issue herein. In this capacity, Lovett prepared quarterly Federal and state payroll tax returns, prepared W-2 Forms, prepared unemployment tax returns, and prepared personal income tax returns for Rocco and/or his father. Sometime prior to 1964, Lovett instructed Rocco to deposit all of DiPalmo Concrete's receipts into bank accounts, and to pay all its expenses by check, or reimburse himself by check for any expenses paid with cash. For taxable years 1964-1968 Lovett prepared Schedule C's for DiPalmo Concrete as follows. Working from DiPalmo Concrete's bank statements and canceled checks, an employee of Lovett analyzed gross receipts, and expenses other than payroll, categorized as to type of expenditure. The payroll expense was calculated by totaling the amounts listed in the DiPalmo Concrete payroll book maintained by petitioner Josephine DiPalmo.[5] Each year Lovett prepared *294 a rough draft of Schedule C for DiPalmo Concrete from the aforementioned analysis of bank statements, canceled checks, and the payroll book, and then went over with Rocco the draft return to make certain that all expenses were properly categorized and that no receipts were double counted. Each year gross receipts were adjusted downwards because Rocco identified certain deposits in DiPalmo Concrete's bank statements as nonincome. In addition to going over receipts and expenses as shown on the bank statements, Lovett asked Rocco if all of DiPalmo Concrete's receipts were deposited in the bank accounts from which Lovett worked, and each year Rocco replied affirmatively. During the years in issue, Rocco owned a corporation, VRN, Inc. (hereinafter VRN), which held real estate. He also owned during the years in issue a 50-percent interest in Big Top of Moorestown Mall, Inc. (hereinafter Big Top), which ran an ice cream store in a shopping mall. Lovett prepared tax returns for VRN and Big Top during the years in issue using procedures similar to those he employed to prepare the *295 Schedule C for DiPalmo Concrete. A journal of receipts was maintained for DiPalmo Concrete for the years 1956 through 1969. Rocco's sister, Therese Pepe, had charge of the journal from 1958 to November 1959, and all entries thereafter were made by Rocco. It was Rocco's practice to record all of his receipts in the journal, and not just DiPalmo Concrete receipts, but entries were identified so that Rocco was able to determine the sources of various items of income. In 1964 Rocco recorded in his journal gross receipts attributable to DiPalmo Concrete of $267,311.55. As part of the records he gave to Lovett to enable him to prepare a Schedule C for DiPalmo Concrete for 1964, Rocco gave Lovett a typed itemization of 1964 DiPalmo Concrete gross receipts, which he represented as reflecting the entries in his journal. This itemization failed to list $8,548.20 of the DiPalmo Concrete receipts recorded in the journal. According to Rocco's journal, DiPalmo Concrete received on February 3, 1964, a $4,000 check, $3,000 of which was deposited in a checking account and $1,000 of which was cashed and used for payroll. Only the $3,000 deposited to checking is reported on the summary given *296 by Rocco to Lovett. On February 25, 1964, DiPalmo Concrete received a $5,548.20 check.This check was cashed and used for payroll, and no amount of this receipt is reported on the summary given to Lovett. On October 12, 1964, DiPalmo Concrete received a $7,000 check. Of the proceeds of this check, $6,000 was deposited in checking and $1,000 was used for payroll, and that $1,000 was not reported on the summary given to Lovett. On December 10, 1964, DiPalmo Concrete received a $12,000 check. Of the proceeds of this check, $11,000 was deposited in checking and $1,000 was used for payroll; that $1,000 was not reported on the summary given to Lovett. Lovett did not refer to the aforementioned itemization in preparing Schedule C for DiPalmo Concrete's year 1964, nor did he ask to see Rocco's journal. Rocco understated his gross receipts from DiPalmo Concrete by $13,272 on Schedule C of his 1965 return [6] and by $30,308.12 on Schedule C of his 1968 return. [7] These sums represent amounts recorded by Rocco in his journal but not reflected in the bank deposits and canceled checks used by Lovett in preparing Rocco's 1965 and 1968 returns. *297 Rocco's journal entries for 1965 show DiPalmo Concrete receipts of $188,817.94. Of this amount $5,279.27 was deposited in accounts maintained by Big Top or VRN, and $7,373.69 was used for payroll, all without being deposited in a DiPalmo Concrete bank account. [8]
Rocco's 1968 journal entries show DiPalmo Concrete receipts of $383,959.95. Of this amount $7,341.70 was deposited in a checking account at Camden Trust maintained by petitioners, [9] $250 was deposited in an account of VRN, and $12,977.26 was deposited in an account at People's Savings maintained by petitioners. [10] These amounts were not deposited in a DiPalmo Concrete bank account. Since the parties have stipulated that petitioners under-reported gross receipts in 1968 by $30,308.12, we conclude that $9,739.16 of the amount recorded in *298 the journal as deposited in DiPalmo Concrete accounts in 1968 was not so deposited. The record provides no hint of what became of these funds. Lovett did not ask for, and was not given, either Rocco's journal or a summary of journal entries relating to DiPalmo Concrete receipts when he prepared Rocco's 1965 and 1968 returns. In January 1970, Rocco was interviewed in connection with an IRS investigation of one Alfonse Lattore. To aid that investigation, Rocco revealed to the IRS the existence of his journal, and turned it over to the IRS. Upon reviewing the journal, the IRS began an investigation of Rocco. Rocco cooperated with respondent in this investigation by making available his journal and other records and voluntarily answering questions. Rocco was a cash basis taxpayer throughout the period before us. In 1968, however, Rocco became indebted to the Camden Lime Company in the amount of $52,007.20 for materials delivered to DiPalmo Concrete. None of this amount was paid in 1968, but on the advice of Lovett, Rocco accrued the $52,007.20 debt in 1968 in an attempt to accurately reflect income.Neither Rocco nor Lovett sought nor obtained permission from the Internal Revenue *299 Service to change Rocco's method of accounting from cash to accrual basis in 1968. Petitioners did not incur any expenses for maintaining a home office in 1965 or 1968, nor did they incur expenses in 1965 or in 1968 for office supplies is an amount greater than the deductions they claimed for office supplies on their returns for those years. OPINION Issue 1
Petitioners filed their joint Federal income tax return for 1965 on April 15, 1966. They filed their return for 1968 on April 15, 1969. The notice of deficiency for those years was issued on November 23, 1977. The period of limitations on assessment and collection of income taxes is generally three years. Sec. 6501(a). The period commences running when the tax return is actually or constructively filed. Therefore, the general three-year period had already run with respect to petitioners' 1965 and 1968 taxable years when respondent mailed the statutory notice. The period of limitations is extended indefinitely if a "false or fraudulent return with the intent to evade tax" has been filed. Sec. 6501(c)(1). [11] Relying on this provision, respondent contends that petitioners' 1965 and 1968 taxable years are *300 still open for assessment and collection. Respondent also contends that at least part of the underpayment of tax for both years in dispute was due to fraud within the intendment of section 6653(b) [12] and that the addition to tax provided by that section is applicable. Fraud, within the meaning of section 6501(c)(1) *301 as well as section 6653(b), is an intentional wrongdoing with the specific intent to evade a tax believed to be owed. ; . The required intent may be shown by circumstantial evidence and reasonable inferences drawn from the facts. ; , affd. . Whether fraud exists with respect to an underpayment of tax is a question of fact, and the burden is on respondent to prove fraud by clear and convincing evidence. Sec. 7454(a); ; Rule 142(b). Respondent concedes that Josephine DiPalmo is innocent of fraud; his determination that each of the returns in question was fraudulent relates solely to the conduct and intent of Rocco.Because she is innocent of fraud, Josephine DiPalmo will not be liable for the addition to tax under section 6653(b). If, however, Rocco committed fraud in connection with the joint returns for 1965 and *302 1968, neither spouse is protected by the statute of limitations insofar as it affects the deficiencies. . Because the years in issue present similar fact patterns, we will consider the fraud issue for those two years together. Respondent's argument that Rocco's 1965 and 1968 returns were fraudulent is based on Rocco's failure to report all 1964, 1965, and 1968 gross receipts from DiPalmo Concrete, and Rocco's concealment from his accountant Lovett of relevant records concerning DiPalmo Concrete's 1964, 1965, and 1968 gross receipts. Petitioners contend that Rocco gave his records for each of the years in issue to Lovett and in good faith relied upon Lovett to correctly prepare his returns. They also point to Rocco's cooperation with respondent's investigation in this case as an indicium that Rocco is free of guilt. Rocco's contention that his understatements of gross receipts for 1965 and 1968 were inadvertent depends upon the premise that Rocco was unaware with respect of each of those years that various sums recorded in his journal as DiPalmo Concrete receipts were not reflected in the gross receipts reported *303 in his Schedule C for 1965 and for 1968. After a careful study of the record, we are unable to accept this premise. Prior to Lovett's preparation of the 1964 Schedule C for DiPalmo Concrete, Rocco gave Lovett various records, not including Rocco's journal, but including a typed schedule that purportedly listed all DiPalmo Concrete receipts recorded in the journal. In preparing this summary, however, Rocco left out various DiPalmo Concrete receipts totaling $8,548.20. All of the deleted receipts represented amounts converted to cash and used for payroll without first being deposited in a DiPalmo Concrete account. Rocco knew that Lovett prepared Schedule C for DiPalmo Concrete by tabulating deposits to the DiPalmo Concrete bank accounts, for Lovett had specifically instructed Rocco to deposit all DiPalmo Concrete receipts in a bank account. By deleting the aforementioned amounts from the summary of his journal, Rocco ensured that the sum of receipts listed on the summary would match the sum of deposits to DiPalmo Concrete bank accounts.
Rocco testified that Lovett calculated DiPalmo Concrete's payroll expenses using payroll books prepared on the basis of cash disbursements, and *304 without reference to DiPalmo Concrete bank accounts. Rocco thus must have known that the DiPalmo Concrete receipts that he converted to cash without depositing in a DiPalmo Concrete account, and used for payroll, would not be included in DiPalmo Concrete's gross receipts as shown on Schedule C, but would be included in Schedule C as a cost of labor. We are thus forced to the conclusion that Rocco knowingly misled Lovett into understating DiPalmo Concrete's 1964 net income on Schedule C of Rocco's 1964 return. We conclude, in short, that on his 1964 tax return Rocco knowingly evaded a tax believed owed. In both 1965 and 1968 Rocco continued his practice of cashing some checks received by DiPalmo Concrete and using some or all of the proceeds without first depositing them in a DiPalmo Concrete bank account. In 1965, $5,279.27 received by DiPalmo Concrete was deposited in accounts of Big Top or VRN, and $7,373.69 was used for payroll. As a result, Lovett, who worked solely from DiPalmo Concrete bank statements in calculating its gross receipts, understated DiPalmo Concrete's 1965 gross receipts. In 1968, $250 received by DiPalmo Concrete was deposited in an account of VRN, and at *305 least $20,318.96 was deposited in petitioners' personal bank accounts, all without having first been deposited in a DiPalmo Concrete business account. As a result, Lovett understated DiPalmo Concrete's gross receipts for 1968. All of the 1965 and 1968 DiPalmo Concrete receipts not deposited in a DiPalmo Concrete bank account were used either for payroll, and as such recorded in DiPalmo Concrete's payroll book and on petitioners' Schedule C as a cost of labor, or were deposited in Rocco's personal bank accounts or accounts of Rocco's corporations. It follows that Rocco's practice of failing to deposit some DiPalmo Concrete receipts for 1965 and 1968 in a DiPalmo Concrete bank account, which caused gross receipts to be underreported, did not in any way affect the amount of DiPalmo Concrete expenses reported by petitioners on Schedule C for 1965 and for 1968. We have found that in 1964 Rocco consciously failed to deposit some DiPalmo Concrete receipts in a DiPalmo Concrete account with the intention of causing Lovett to understate income on petitioners' 1964 tax return. We have also found that in 1965 and 1968 Rocco failed to deposit in a DiPalmo Concrete bank account various *306 DiPalmo Concrete receipts.Given the close similarity of Rocco's behavior in 1965 and 1968 to his behavior in 1964, we conclude that in 1965 and 1968, as in 1964, Rocco hid DiPalmo Concrete receipts from Lovett with the intention of underreporting his gross receipts, and his net income, for those tax years. Rocco did not give Lovett a deliberately inaccurate summary of his 1965 and 1968 journal entries, but this can be attributed to the fact that Lovett neither used the 1964 summary, nor asked to see Rocco's journal, in preparing Schedule C for DiPalmo Concrete's 1964 earnings. There are some facts on the record that tend to support Rocco's contention that he was innocent of fraudulent intent. He cooperated with respondent's investigation of him, and willingly handed over to respondent his records, and particularly his journal book, without which respondent would have been hardpressed to prove even an understatement of income, let alone fraud. On balance, however, and considering the entire record, we find and hold that respondent has met his burden of proving fraud within the intendment of sections 6501(c)(1) and and 6653(b) for both 1965 and 1968. [13]
*307 Issue 2
In his statutory notice of deficiency for 1968 respondent disallowed deductions of $52,007.20 for purchases accrued, $1,200 for wages paid, and $3,000 for forfeiture of deposit. Petitioners have the burden of proof as to all of these deductions. Rule 142(a). A taxpayer who wishes to change his method of accounting is required to secure the consent of the Internal Revenue Service before computing income under the new method, with certain exceptions not here applicable. Sec. 446(e). [14]
Petitioners were on the cash receipts and disbursements method of reporting income and expenses for the years 1964 through 1970. Lovett testified that he was responsible for claiming the $52,007.20 deduction for purchases on petitioners' 1968 income tax return; that he accrued this *308 expense in an attempt to more accurately reflect petitioners' income; and that he did not seek permission from the Internal Revenue Service to change petitioners' method of reporting income and expenses for 1968 from the cash basis method of accounting to the accrual basis method of accounting. Petitioners offered no evidence in rebuttal of Lovett's testimony; indeed, they concede on brief that Lovett improperly failed to seek permission from the Internal Revenue Service to change from cash basis to accrual basis accounting for 1968.Accordingly, respondent's determination that petitioners are not entitled to an accrual deduction for purchases in the taxable year 1968 in the amount of $52,007.20 will be upheld. Petitioners failed to present any evidence concerning the two remaining deductions disallowed by respondent, and we must therefore uphold respondent's disallowance of those deductions. Rule 142(a). Issue 3
Rocco testified that he incurred home office expenses of $10,000 in 1965 and $3,300 in 1968; that he incurred expenses for office supplies of $180 in each year; and that he incurred travel and entertainment expenses of $33,490 in each year, all in addition to the *309 deductions claimed on petitioners' Schedule C and income tax returns for 1965 and 1968. Petitioners concede that they cannot satisfy the requirements of section 274 with respect to the 1965 and 1968 travel and entertainment expenses.The only evidence offered to substantiate the home office and office supply expenses was Rocco's vague and self-serving testimony, and petitioners failed to make any argument on brief concerning these alleged expenses. Petitioners have the burden of proving that they incurred the aforementioned expenses. Rule 142(a). On our review of the whole record, we find and hold that Rocco's vague and self-serving testimony does not suffice to carry their burden of proof as to the expenses in issue. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The section 6653(b) addition is asserted only against petitioner Rocco DiPalmo.↩
3. Petitioners have conceded the deficiency for 1970 and respondent has conceded the sec. 6653(a) addition to tax for that year.↩
4. Rocco received a grade of "D" in business ethics.↩
5. Lovett also used this payroll book to prepare Forms 940 and Forms 941 for DiPalmo Concrete.↩
6. On Schedule C of their 1965 return petitioners reported gross receipts of $175,545.74, and cost of labor of $60,359.20, material and supplies of $78,151.16, other costs of $802.90 for subcontractors, for a gross profit of $36,232.48. Petitioners claimed other business deductions, not here challenged by respondent, of $13,765.79, for total net income from DiPalmo Concrete of $22,466.69. ↩
7. On Schedule C of their 1968 returns, petitioners reported gross receipts of $356,220.79, and cost of labor of $93,244.58, material and supplies of $168,834.29, other costs of $41,100 for subcontractors, for a gross profit of $53,041.92. Petitioners claimed other business deductions of $34,166.30, not here challenged by respondent, for total net income from DiPalmo Concrete of $18,875.62.↩
8. The parties did not explain, and we are unable to account for, the remaining $619.04 of the stipulated understatement.↩
9. This amount comprises four checks received by DiPalmo Concrete in January 1968. ↩
10. Rocco deposited in People's Savings $6,750 on or around October 28, 1968, $1,526.70 on or around November 5, 1968, and $4,700.56 on or around November 25, 1968.↩
11. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.
* * * (c) Exceptions.-- (1) False Return.--In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. ↩
12. SEC. 6653. FAILURE TO PAY TAX. * * * (b) Fraud:--If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount, shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.↩
13. Rocco makes one other argument that is worthy of comment. Rocco testified that he failed to claim numerous allowable deductions on his 1965 and 1968 returns, including (in both years) deductions for expenses of maintaining a home office, expenses for office supplies and equipment, and travel and entertainment expenses. Petitioners concede that they cannot meet the requirements of section 274 with respect to the aforementioned travel and entertainment expenses. They argue, however, that Rocco's failure to claim allowable deductions is an indicium of his naivete regarding tax matters, and supports his contention that his failure to report all of DiPalmo Concrete's gross receipts was inadvertent. Petitioner's concession of the section 274 issue with respect to Rocco's alleged travel and entertainment expenses and our findings of fact concerning the alleged home office and office supply expenses entail that none of petitioners' alleged expenses are allowable as deductions. Even if we assume, however, that Rocco did incur these expenses but did not bother to document them because he did not know they were deductible, or did not realize that substantiation was required for tax purposes, we are still satisfied that respondent has carried his burden of proving fraud. Naive Rocco may have been concerning the intricacies of sections 161, 162 and 274, but the record makes clear that he grasped the basic concept that one can evade taxes by understating receipts, and that in 1965 and 1968 he put his knowledge of this concept into practice, with the intention of evading a tax believed owed, by failing to disclose to his return preparer the existence of certain DiPalmo Concrete receipts.↩
14. Section 1.446-(e)(2)(ii)(a), Income Tax Regs., provides that: A change in the method of accounting includes a change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan. * * * Changes in method of accounting include a change from the cash receipts and disbursement method to an accrual method * * *↩